# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

JVST GROUP,

        **Plaintiff,**

    **v.**                    **Case No. 22-CV-556**

PIONEER PET PRODUCTS, LLC,

        **Defendant.**

---

PIONEER PET PRODUCTS, LLC,

        **Plaintiff,**

    **v.**                    **Case No. 22-CV-839**

JVST GROUP,

        **Defendant.**

---

# DECISION AND ORDER

---

## 1. Facts and Procedural Background

Pioneer Pet Products, LLC and JVST Group (which does business under the name Wonder Creature) both sell pet fountains—essentially water dishes for cats and dogs that recirculate water by way of a small electric pump. Pioneer owns several patents related

to pet fountains—specifically, U.S. Patent No. 8,813,683, entitled Pet Fountain Assembly, issued on August 26, 2014; U.S. Patent No. 9,572,323, entitled Interchangeable Flow Directing Orifice Inserts and Recirculating Pet Fountain with Flow Directing Orifice Inserts, issued on February 21, 2017; and U.S. Patent No. 9,730,427, entitled Pet Fountain Assembly with Lift Tube, issued on August 15, 2017.

Pioneer alleges that certain of JVST's pet fountains infringe on its patents. JVST filed the action numbered 22-CV-556 on May 10, 2022, seeking declarations that its products do not infringe the '683 patent and that the '683 patent is invalid, as well as alleging that Pioneer tortiously interfered with its economic relationships with current and prospective customers. (ECF No. 1.[1]) Pioneer, in turn, filed the action numbered 22-CV-839 on July 22, 2022, wherein it alleges that JVST is infringing the '683, '323, and '427 patents. (22-CV-839, ECF No. 1.) Pioneer also asserted these same claims as counterclaims in the action initiated by JVST. (ECF No. 9.) JVST likewise asserted counterclaims in 22-CV-839, seeking declarations of invalidity and noninfringement with respect to the '683, '323, and '427 patents, although it did not allege tortious interference as a counterclaim. (22-CV-839, ECF No. 9.)

The court granted the parties' joint motion to consolidate the two actions (ECF No. 11), and all parties consented to the full jurisdiction of this court (ECF Nos. 3, 12; 22-CV-

---

[1] All ECF citations refer to the 22-CV-556 case unless otherwise indicated. Citations reflect the ECF pagination.

Case 2:22-cv-00556-WED   Filed 11/02/22   Page 2 of 21   Document 33

839, ECF Nos. 4, 10). The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1338(a), and 1367(a).

On September 2, 2022, Pioneer moved for a preliminary injunction barring JVST from selling 14 pet fountains that allegedly infringe on the '323 and '683 patents. (ECF No. 19.) It identifies the products by their Amazon Standard Identification Numbers (ASIN) and breaks them down into two broad categories. The first are those under ASINs B08T68FVBD, B08T612Q4D, B08T6F2HXP, and B08T64VSWF, which Pioneer alleges are the same products but for the fact that they are different colors. (ECF No. 20 at 5, fn.2.) Also included in this first category are five other products—B0936JVTSH, B09NKLRCTG, B09362JWQX, B0936N77L9, and B09364PK54—which Pioneer believes contain the same infringing components. (ECF No. 20 at 5, fn.2.) The second category is comprised of ASINs B0936PM77N, B0936L1CGL, B09YR564PK, B0936Q31VC, and B0936N9C41, which again differ only in their color. (ECF No. 20 at 12, fn.4.)

JVST opposes the motion. (ECF No. 28.)

**2. Applicable Law**

This court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Intel Corp. v. ULSI Sys. Tech.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) ("[A] preliminary injunction is a drastic and

extraordinary remedy that is not to be routinely granted."). A party seeking a preliminary injunction must establish (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of the equities favors a preliminary injunction; and (4) a preliminary injunction is in the public interest. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter*, 555 U.S. 7).

"With regard to the first factor—establishing a likelihood of success on the merits—the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire*, 566 F.3d at 1376. Thus, the movant must show that it is more likely than not that it will prevail at trial on at least one claim. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010). "[T]he weight of the likelihood may be considered as an equitable factor, along with issues of the position of the parties with respect to the status quo, in the ultimate balance of equities." *Revision Military*, 700 F.3d at 526.

When the alleged infringer raises a question of invalidity in opposition to a motion for a preliminary injunction, the patentee enjoys a presumption that the patent is valid. *Titan Tire*, 566 F.3d at 1377. But because the movant has the burden to prove that a preliminary injunction is appropriate, it must persuade the court that it "is likely to

4

succeed at trial on the validity issue." *Id*. "A preliminary injunction should not issue if the accused infringer 'raises a substantial question concerning either infringement or validity.'" *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

     As to irreparable harm, the patentee must show that absent an injunction it will suffer irreparable harm as a result of the infringement. *Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 752 (Fed. Cir. 2015) (citing *Apple Inc. v. Samsung Elecs. Co.* ("*Apple II*"), 695 F.3d 1370, 1373 (Fed. Cir. 2012); *Apple Inc. v. Samsung Elecs. Co.* ("*Apple I*"), 678 F.3d 1314, 1324 (Fed. Cir. 2012)). "[T]he simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm. As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (emphasis in original) (quoting *Va. Petroleum Jobbers Asso. v. Fed. Power Com.*, 104 U.S. App. D.C. 106, 259 F.2d 921, 925 (1958)).

But courts must be mindful that "the principal value of a patent is its statutory right to exclude" and therefore it should not be presumed "that monetary damages will always suffice to make the patentee whole." *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). Nonetheless, the loss of the right to exclude others for a period of time is not, in itself, irreparable harm. "Application of a concept that *every* patentee is *always* irreparably harmed by an alleged infringer's pretrial sales would … disserve the patent system." *Id.* at 1558 (emphasis and ellipses in original) (quoting *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)).

"A presumption of irreparable harm arises upon a clear (or strong) showing of infringement and validity." *Glaxo Grp. Ltd. v. Apotex, Inc.*, 64 F. App'x 751, 756 (Fed. Cir. 2003) (citing *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1271 (Fed. Cir. 1985)). The presumption may be rebutted by evidence that (1) the non-movant has or will soon cease the allegedly infringing activities, thus making an injunction unnecessary; (2) the movant has engaged in a pattern of granting licenses under the patent such that it may be reasonable to expect the invasion of the patent right can be recompensed with a royalty rather than with an injunction; or (3) the movant unduly delayed in bringing suit, thereby negating the idea of irreparability. *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996).

### 3. The '683 Patent

Pioneer alleges that all 14 identified products infringe claim 28 of the '683 patent.

Claim 28 of the '683 patent claims:

A pet fountain, comprising:

a basin having a bottom wall and a basin sidewall extending therefrom, the basin being adapted to hold water therein;

a pump assembly that pumps the water into the basin through a pet fountain defined at least partially by the basin for presenting drinking water to a pet;

a cover at least partially overlying the basin, the cover defining an outer perimeter thereof and including an upper drinking bowl defined by a bowl wall extending about a perimeter of the upper drinking bowl that receives water from the pump and is configured such the water pools within the upper drinking bowl for presenting the drinking water to the pet and spills out of the upper drinking bowl toward the basin;

wherein at least a portion of the outer perimeter of the cover is supported by the basin sidewall and wherein the pump assembly extends between the basin and the cover so as to locate or support the cover at a location that is spaced from the outer perimeter of the cover.

### 3.1. Likelihood of Success

#### 3.1.1. Validity of the '683 Patent

JVST argues that the '683 patent is invalid because all aspects of claim 28 of the '683 patent were anticipated by UK patent 2,458,173, which was not cited or considered in the prosecution of the '683 patent. (ECF No. 28 at 7-11.)

Pioneer replies that the '173 patent is not prior art because the priority date of claim 28 is May 29, 2009, predating the September 9, 2009, effective date of the '173 patent.

7

Consequently, the '173 patent is prior art only if JVST can demonstrate by clear and convincing evidence that claim 28 is not entitled to the May 29, 2009, priority date. (ECF No. 30 at 2.)

The '683 patent discloses that it is a "[c]ontinuation-in-part of application No. 12/474,460, filed on May 29, 2009, now Pat. No. 8,381,685 …." *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008) (discussing a "continuation-in-part" application). "To obtain the benefit of the filing date of a parent application, the claims of the later-filed application must be supported by the written description in the parent 'in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.'" *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010) (quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

Pioneer raised the continuation filing date only in reply to JVST's argument that the '173 patent anticipated the '683 patent. Following Pioneer's reply, JVST requested oral argument or permission to file a sur-reply to address Pioneer's arguments regarding the priority of the '683 patent. However, as noted, the '683 patent discloses that it is a "[c]ontinuation-in-part of application No. 12/474,460, filed on May 29, 2009, now Pat. No. 8,381,685 …." Given the nature of the invalidity argument that JVST raised in its response, it should have addressed how the disclosure that the patent was a "[c]ontinuation-in-part

of application No. 12/474,460" may have affected the priority date. It did not. Having failed to do so, it has forfeited the opportunity to address the issue.

In the absence of any argument from JVST as to why the May 29, 2009, date should not apply, it is unnecessary for Pioneer to go any further at this stage to demonstrate that a priority date of May 29, 2009, applies. Thus, JVST's arguments that the '683 patent was anticipated by the '173 patent fail to raise a substantial question as to the validity of the '683 patent.

JVST further argues that the '683 patent was also anticipated by U.S. Patent No. 7,270,082 and rendered obvious by U.S. Patent No. 6,405,937 in view of the '173 patent. However, it does not develop these arguments in its brief. Instead, it refers to arguments that it made to the United States Patent and Trademark Office across 44 pages in its request for reexamination. (ECF No. 28 at 11.) As Pioneer notes, this attempt to incorporate arguments by reference constitutes an impermissible attempt to evade the court's page limits under Civil Local 7(f). (ECF No. 30 at 4.) Therefore, the court disregards any alternative arguments not presented in JVST's response.

Consequently, JVST has filed to raise a substantial question as to the validity of the '683 patent.

### 3.1.2.   Infringement of the '683 Patent

"Determining infringement involves three steps: (1) interpreting the language of the claims, (2) assessing the nature of the accused infringer's acts, and (3) applying the

claims as construed to those acts." 7 Chisum on Patents § 20.04[1][d]. A patentee must show that it will "likely" prove infringement. *Titan Tire*, 566 F.3d at 1376. It need not prove infringement "beyond all question." *Ill. Tool Works*, 906 F.2d at 682.

JVST first argues that Pioneer cannot show it is likely to succeed on the merits because it failed to adequately allege infringement in its complaint. (ECF No. 28 at 16-17.) It notes, "Claims that cannot even survive the pleading standard are unlikely to satisfy the preliminary injunction standard." (ECF No. 28 at 16 (citing *Seeley Int'l Pty Ltd v. Maisotsenko*,[2] No. 21-cv-01350-CMA-KLM, 2021 WL 2333040, at *1 (D. Col. Jun. 8, 2021)).

An obvious problem with this line of argument is that JVST answered Pioneer's complaint instead of filing a motion to dismiss. (22-CV-839, ECF No. 9.) While the sufficiency of a complaint may be relevant to the preliminary injunction analysis when the motion precedes the time to respond to the complaint, the argument has no relevance beyond the motion to dismiss stage.

More substantively, JVST argues that the accused products lack the following limitations of claim 28: "the basin for presenting drinking water to a pet" and "a cover at least partially overlying". (ECF No. 28 at 17.) It asserts that "the basin for presenting drinking water to a pet" "should mean that the basin has an opening through which a

---

[2] *Seeley Int'l PTY LTD. v. Maisotsenko*, Civil Action No. 21-cv-01350-CMA-KLM, 2021 U.S. Dist. LEXIS 106987, at *1 (D. Colo. June 8, 2021), involved a motion for a temporary restraining order.

pet is allowed to drink water directly from the basin." In the accused products the cover completely overlies the basin. (ECF No. 28 at 18.)

Claim 28 refers to three relevant components—a "basin," a "cover" and an "upper drinking bowl." Claim 28 states that "the upper drinking bowl … receives water from the pump and is configured such the water pools within the upper drinking bowl for presenting the drinking water to the pet and spills out of the upper drinking bowl toward the basin."

Pioneer asserts that "basin" should be defined as simply "having a bottom wall and a basin sidewall extending therefrom, the basin being adapted to hold water therein." (ECF No. 30 at 8). That definition, however, appears incomplete because claim 28 later refers to "the basin for presenting drinking water to a pet." Thus, claim 28 seems to contemplate there being two places from which a pet may drink: the "upper drinking bowl" and the "basin." Contrary to Pioneer's argument (ECF No. 30 at 8), this is not merely a preferred embodiment but is an aspect of claim 28.

Because the accused products do not allow for the pet to drink from the basin, Pioneer has not demonstrated that it is likely to succeed on its claim that JVST infringed on the '683 patent. However, the court underscores that its construction of the claims at this stage is merely preliminary and tentative. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003). Moreover, the court acknowledges that claim 28 appears to be internally inconsistent in that it contemplates the pet being able to drink

from the basin but also a cover completely overlying the basin.[3] But resolving such conflicts requires a more complete record. *Cf., generally*, *Markman v. Westview Instruments*, 517 U.S. 370 (1996). At this stage it is sufficient to note that the most likely construction of claim 28 is inconsistent with Pioneer's claim of infringement.

Because Pioneer has not demonstrated a likelihood of success on its claim of infringement of the '683 patent, it is not entitled to a preliminary injunction with respect to that patent. *Reebok*, 32 F.3d at 1555-56 ("a district court may properly deny a motion for preliminary injunction simply based on the movant's failure to establish a reasonable likelihood of success on the merits").

### 4. The '323 Patent

Again, Pioneer's motion focuses on only a single claim of the '323 patent, which it alleges is infringed by all 14 of the accused products. Claim 26 of the '323 patent claims:

A recirculating pet fountain comprising:

a basin having a bottom and sidewall extending upwardly therefrom;

a pump releasably mounted to the basin, the pump having a tubular discharge nipple from which water is expelled from the pump; and

a cover removably carried by the basin, the cover having a fluid-conveying tube with a fluid-conducting bore formed therein extending downwardly therefrom, the fluid-conveying tube having a free end comprising a pump locator socket with a chamfered axial end edge of the fluid-conveying tube, the chamfered axial end edge inclined toward a fluid-conducting bore formed in the tube to receive and guide the tubular discharge nipple of the

---

[3] Claim 28 includes the limitation "a cover at least partially overlying the basin." "[A]t least partially overlying the basin" would include a cover completely covering the basin.

releasably mounted pump into telescopic generally coaxial registry with the fluid-conveying tube.

**4.1.Likelihood of Success**

### 4.1.1.   Validity of the '323 Patent

JVST asserts, "It is not clear what improvements or advantages the patent alleges to have over prior art, especially with respect to the asserted claim (claim 26)." It contends,

> Elements such as "a basin having a bottom and sidewall," "a pump releasably mounted to the basin" and having a tubular discharge nipple, and "a cover removably carried by the basin" and having "a fluid-conveying tube with a fluid-conducting bore formed therein" are all conventional elements in a fountain, as evidenced by Kirk, U.S. Pat. Pub. No. 2006/0032936 to Proch ("Proch") (Ex. J), and U.S. Pat. No. 7,089,881 to Plante ("Plante 881") (Ex. K).

(ECF No. 28 at 12.)

The only limitation of claim 26 that JVST cannot trace back to the prior art is "the fluid-conveying tube having a free end comprising a pump locator socket with *a chamfered axial end edge inclined toward a fluid-conducting bore … * to receive and guide the tubular discharge nipple of the releasably mounted pump…." (ECF No. 28 at 13 (emphasis in original).) But it argues that this is hardly novel; chamfered edges in tubes to ease assembly have been noted in patents for over 100 years. (ECF No. 28 at 13-14.)

Pioneer replies by pointing out limitations present in claim 26 that are not present in any of the patents cited by JVST. (ECF No. 30 at 4-5.) Moreover, it notes that JVST has

Case 2:22-cv-00556-WED   Filed 11/02/22   Page 13 of 21   Document 33

not identified any pet fountain that employed a tube with a chamfered edge. (ECF No. 30 at 6.)

The fact that some elements of a claim were reflected in prior art is not necessarily inconsistent with patentability. JVST's arguments implicate two related principles—anticipation and obviousness. "Anticipation requires that all of the claim elements and their limitations are shown in a single prior art reference." *In re Skvorecz*, 580 F.3d 1262, 1266 (Fed. Cir. 2009). As for obviousness, "[a] claimed invention is unpatentable if the differences between it and the prior art 'are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.'" *Robotic Vision Sys. v. View Eng'g, Inc.*, 189 F.3d 1370, 1376 (Fed. Cir. 1999) (quoting 35 U.S.C. § 103(a) (1994); citing *Graham v. John Deere Co.*, 383 U.S. 1, 13-14 (1966)).

JVST has failed to present substantial evidence of invalidity on the basis of anticipation because it has not pointed to any single prior art reference that shows all the claim elements and their limitations. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015). And although at times it baldly asserts that aspects of claim 26 of the '323 patent were obvious, it does not develop those arguments. *Cf. Graham*, 383 U.S. 1, 17 (discussing how courts assess obviousness); *see also* 35 U.S.C. § 103(a). Consequently, it has failed to show that there is substantial evidence of invalidity.

### 4.1.2. Infringement of the '323 Patent

JVST does not substantively dispute Pioneer's allegations that the accused products infringe claim 26 of the '323 patent. (ECF No. 28 at 20-21.) It merely reiterates its argument that a chamfered edge has been a well-known innovation for more than 100 years. (ECF No. 28 at 20-21.) Therefore, Pioneer has adequately demonstrated a likelihood of success as to its infringement claims under the '323 patent.

### 4.2. Irreparable Harm

JVST argues that an absence of irreparable harm is evidenced by Pioneer having delayed for three years in bringing this action. (ECF No. 28 at 22-23.) Its argument is based on a declaration of Pioneer's president wherein he states that JVST first began selling pet fountains on Amazon in 2019. (ECF No. 21, ¶ 6.) But the declaration does not state that JVST began selling the *accused* fountains in 2019. Pioneer acknowledges that JVST sells other, non-infringing pet fountains. (ECF No. 20 at 2.)

Granted, Pioneer similarly suggests that JVST began selling the accused fountains in 2019 when it states, "Pioneer Pet is not enjoying the same success it had prior to Wonder Creature's entry into the market in 2019." (ECF No. 20 at 2.) Of course, that JVST's entry into the market has hurt Pioneer's sales is immaterial unless its success is a result of its infringement on Pioneer's patents. The Amazon listings provided by Pioneer for two of the accused products state that they were first made available in April 2021. (ECF Nos. 22-1 at 5; 22-2 at 5.)

JVST also notes that Pioneer attempted to negotiate a royalty from JVST. (ECF No. 28 at 21 (citing ECF No. 29-1 at 2.) It argues that Pioneer's willingness to resolve the case through a payment of royalties suggests that a monetary remedy will be sufficient. (ECF No. 28 at 21 (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)).) However, a willingness to license an invention does not automatically preclude a preliminary injunction. *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005), *vacated and remanded on other grounds*, 547 U.S. 388 (2006).

Notwithstanding JVST's failure to develop the issue, the court recognizes arguments with respect to the alleged obviousness of the '323 patent such that the court cannot say that Pioneer has made a clear showing of validity so as to be entitled to a presumption of irreparable harm. *Cf. Polymer Techs.*, 103 F.3d at 974.

Because Pioneer and JVST are direct competitors in the pet fountain market, it may be easier for Pioneer to demonstrate irreparable harm. *See Endo Pharm., Inc. v. Amneal Pharm., LLC*, 2016 U.S. Dist. LEXIS 57420, at *26 (S.D.N.Y. Apr. 29, 2016) (citing *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013)). Pioneer asserts that it "has suffered and will continue to suffer irreparable harm in the form of lost market share in the pet fountain market on Amazon." (ECF No. 20 at 20.)

Pioneer notes that between June 2021 and June 2022 its sales decreased by 32 percent despite it increasing advertising and there being significant increases in overall pet fountain sales on Amazon. (ECF No. 20 at 20-21 (citing ECF No. 21, ¶ 8).) It argues,

"Taking the market growth into consideration, from which Pioneer Pet would have expected to benefit, Pioneer Pet's market share has decreased by far more than 32%." (ECF No. 20 at 21.)

If Pioneer's sales decreased in the face of overall market growth, a logical inference is that its market share has diminished. And courts have referred to the threat of lost market share as a relevant consideration in assessing irreparable harm. *Cf. Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008); *Automated Merch. Sys. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009).

However, Pioneer's arguments focus on what *has* happened, not on what *will* happen. A preliminary injunction does not afford a remedy for injuries already incurred but instead is focused on preventing further harms for which the movant does not have an adequate remedy at law. Pioneer does not explain how it is likely that it will continue to lose market share absent a preliminary injunction. Moreover, for lost market share to be irreparable it must encompass more than just decreased sales. Market share is valuable in that it is a gauge of competitiveness, profitability, and growth. Diminished market share may make it more difficult for businesses to attract investors or may decrease the value of a company in the event of a sale. In certain industries, market share may be significant in a business's ability to attract and retain customers.

Pioneer, however, does not suggest how its loss of market share would result in any of these or other intangible or irreparable harms. Its argument is simply that it lost

market share, which amounts to nothing more than an argument that it lost (and will continue to lose) sales. But lost sales are not irreparable and thus not a basis for a preliminary injunction. *See Reebok*, 32 F.3d at 1558; *Ill. Tool Works*, 906 F.2d at 683 (noting that if "potential lost sales" alone was sufficient to demonstrate irreparable harm "that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances").

Pioneer does not point to any evidence suggesting to what extent the accused products are responsible for that diminished revenue (much less that those sales were attributable to the allegedly infringing aspect of the accused products). It does not, for example, offer any suggestion as to the volume of sales associated with the accused products. The court has little information about the scope of the market, but it is clearly larger than just Pioneer's patented products and JVST's accused products. Pioneer asserts that "there are other infringers in the market" (ECF No. 20 at 2, fn.1), and acknowledges that not all of JVST's pet fountains allegedly infringe Pioneer's patents (ECF No. 20 at 2). And given that the record refers to patents by others for pet fountains, *see* U.S. Patent Nos. 7,270,082; 5,501,178, the market presumably includes other non-infringing pet fountains from other manufacturers. In short, Pioneer has not shown that its lost revenue (and any resulting diminished market share) is likely attributable to JVST's alleged infringement rather than other market factors, much less that it stands to continue to lose market share absent a preliminary injunction.

Pioneer also notes that pet fountains include replaceable filters. A person who purchases a pet fountain will tend to purchase replacement filters for that fountain from the fountain manufacturer. (ECF No. 20 at 21-22.) Thus, when Pioneer loses a fountain sale, it also loses the future sales of filters. Inversely, when JVST gains a sale through infringement, it gains those future filter sales. Although it might not be feasible to trace which specific filter purchases are attributable to a purchase of an infringing fountain (because JVST uses the same filters in its allegedly infringing fountains as it uses in its non-infringing fountains), it would seem that there would be means for reliably determining such damages if those damages were found to be within the scope of Pioneer's infringement claims. These harms are compensable in the form of damages, and Pioneer does not suggest that JVST would be unable to pay damages, *cf. Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 725 F. Supp. 951, 959 (N.D. Ill. 1989).

Accordingly, Pioneer has failed to show that it is likely to suffer irreparable harm absent a preliminary injunction. It "can point to no specific interest that needs protection through interim equitable relief." *High Tech Med. Instrumentation*, 49 F.3d at 1557. The harm it is likely to suffer would be in the form of lost sales of both pet fountains and associated filters. Such harm is reparable through damages. This absence of irreparable harm applies equally to both the '683 and '323 patents. Therefore, the absence of irreparable harm is an alternative reason for denying Pioneer's motion with respect to the

19

'683 patent. In the absence of irreparable harm, the court's analysis ends, and it must deny Pioneer's motion for a preliminary injunction. *Reebok*, 32 F.3d at 1556.

### 5. JVST's Motion to File a Sur-Reply or for Oral Argument

Following the conclusion of briefing, JVST filed a motion requesting oral argument. (ECF No. 32.) Alternatively, it asks that it be allowed to file a sur-reply. (ECF No. 32.) It argues that such relief is necessary because Pioneer, in its reply, "raises numerous misleading arguments based on its incorrect application of laws concerning the priority date of the '683 Patent, claim construction, obviousness, and the nexus requirement of the irreparable harm factor. Further, Pioneer Pet mischaracterizes the factual record and Wonder Creature's arguments asserted in opposition." (ECF No. 32 at 1-2.)

JVST has not demonstrated that oral argument or a sur-reply is necessary. As noted above, JVST should have addressed the May 29, 2009, priority date in its response. More significantly, having concluded that Pioneer is not entitled to a preliminary injunction given the current state of the record, it is unnecessary to grant JVST's motion for either oral argument or to file a sur-reply. Therefore, JVST's motion (ECF No. 32) will be denied.

### 6. Conclusion

Pioneer has not demonstrated that it is likely to succeed on its claim of infringement of '683 patent. Nor has it demonstrated that, with respect to either the '683 patent or the '323, it is likely to suffer irreparable harm absent a preliminary injunction.

**IT IS THEREFORE ORDERED** that Pioneer Pet Products, LLC's motion for a preliminary injunction (ECF No. 19) is **denied**.

**IT IS FURTHER ORDERED** that JVST's motion for oral argument or in the alternative to file a sur-reply (ECF No. 32) is **denied**.

Dated at Milwaukee, Wisconsin this 1st day of November, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge