# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JVST GROUP,**

        **Plaintiff,**

v.                        Case No. 22-CV-556

**PIONEER PET PRODUCTS, LLC,**

        **Defendant.**

---

**PIONEER PET PRODUCTS, LLC,**

        **Plaintiff,**

v.                        Case No. 22-CV-839

**JVST GROUP,**

        **Defendant.**

---

## DECISION AND ORDER

**1. Facts and Procedural Background**

Pioneer Pet Products, LLC and JVST Group (which does business under the name Wonder Creature) both sell pet fountains—essentially water dishes for cats and dogs that recirculate water by way of a small electric pump. Pioneer owns several patents related

to pet fountains—specifically, U.S. Patent No. 8,813,683, entitled Pet Fountain Assembly, issued on August 26, 2014; U.S. Patent No. 9,572,323, entitled Interchangeable Flow Directing Orifice Inserts and Recirculating Pet Fountain with Flow Directing Orifice Inserts, issued on February 21, 2017; and U.S. Patent No. 9,730,427, entitled Pet Fountain Assembly with Lift Tube, issued on August 15, 2017.

Pioneer alleges that certain of JVST's pet fountains infringe on its patents. JVST filed the action numbered 22-CV-556 on May 10, 2022, seeking declarations that its products do not infringe the '683 patent and that the '683 patent is invalid, as well as alleging that Pioneer tortiously interfered with its economic relationships with current and prospective customers. (ECF No. 1.[1]) Pioneer, in turn, on July 22, 2022, filed the action numbered 22-CV-839, wherein it alleges that JVST is infringing the '683, '323, and '427 patents. (22-CV-839, ECF No. 1.) Pioneer also asserted these same claims as counterclaims in the action initiated by JVST. (ECF No. 9.) JVST likewise asserted counterclaims in 22-CV-839, seeking declarations of invalidity and noninfringement with respect to the '683, '323, and '427 patents, although it did not allege tortious interference as a counterclaim. (22-CV-839, ECF No. 9)

The court granted the parties' joint motion to consolidate the two actions (ECF No. 11), and all parties consented to the full jurisdiction of this court (ECF Nos. 3, 12; 22-CV-

---

[1] Citations reflect the ECF pagination. All ECF citations refer to the 22-CV-556 case unless otherwise indicated.

839, ECF Nos. 4, 10). The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1338(a), and 1367(a).

On September 2, 2022, Pioneer moved for a preliminary injunction barring JVST from selling 14 pet fountains that allegedly infringe on the '323 and '683 patents. (ECF No. 19.)

The parties submitted their joint Rule 26(f) report on September 8, 2022. (ECF No. 23.) In the report JVST stated it planned to ask the United States Patent and Trademark Office (USPTO) to reexamine the asserted patents and to ask the court to stay these proceedings pending the resolution of that review. (ECF No. 23 at 3.) On September 15, 2022, the court held a scheduling conference and issued a schedule consistent with the parties' proposals. (ECF No. 27.)

JVST filed its requests for reexamination with the USPTO on September 21 and 22, 2022. (ECF No. 36, ¶¶ 2-4.)

Briefing on Pioneer's motion for a preliminary injunction concluded on October 7, 2022, and on November 1, 2022, the court denied Pioneer's motion. (ECF No. 33); *JVST Grp. v. Pioneer Pet Prods., LLC*, No. 22-CV-556, 2022 U.S. Dist. LEXIS 199290 (E.D. Wis. Nov. 1, 2022). Significant in the court's conclusion was its finding that any harm Pioneer may sustain absent an injunction was likely compensable by damages and therefore not irreparable. *Id*, at *24-25.

The USPTO granted JVST's requests for reexamination of the asserted patents in three separate decisions dated November 10, 16, and 17, 2022. (ECF No. 36, ¶¶ 5-7.) On November 28, 2022, counsel for JVST emailed counsel for Pioneer, inquiring whether Pioneer would agree to stay these proceedings pending the USPTO's review (ECF No. 36, ¶ 8.) Counsel for Pioneer responded on November 30, 2022, that it would not agree to a stay. (ECF No. 36, ¶ 9.) Pioneer served its first set of interrogatories and requests for production on December 2, 2022. (ECF No. 36, ¶ 10.)

On December 7, 2022, JVST moved to stay these actions pending completion of the reexamination process. (ECF No. 34.) Pioneer opposes the motion. (ECF No. 37.)

2. **Applicable Law**

Under 35 U.S.C. § 302 any person may ask the USPTO to undertake an ex parte reexamination a patent in light of prior art. *See Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1345 (Fed. Cir. 2020) (distinguishing ex parte reexamination, inter partes reexamination, inter partes review, and post-grant review). "In enacting the reexamination procedure, Congress sought to create an inexpensive, expedient means of determining patent validity to which courts could defer in patent infringement cases." *C&C Power, Inc. v. C&D Techs., Inc.*, No. 12 C 3376, 2013 U.S. Dist. LEXIS 18171, at *3 (N.D. Ill. Feb. 11, 2013) (citing H.R. Rep. 96-1307(I) (Sept. 9, 1980); *Ingro v. Tyco Indust., Inc.*, 227 U.S.P.Q. 69, 70 (N.D. Ill. 1985)).

The USPTO will undertake an ex parte reexamination if it determines that there exists "a substantial new question of patentability affecting any claim of the patent …." 35 U.S.C. § 303(a); *see also* 35 U.S.C. § 304. "When the Patent Office institutes ex parte reexamination, it reopens prosecution to determine whether the claimed subject matter should have been allowed in the first place." *Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1379 (Fed. Cir. 2015). "'In a very real sense, the intent underlying reexamination is to start over' in the Patent Office." *Id.* (quoting *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985)).

Because ex parte reexamination involves the USPTO assessing the validity of claims, the outcome of the reexamination process stands to affect any litigation alleging infringement of those claims. Consequently, when a request for ex parte reexamination is made contemporaneous with pending litigation, courts are routinely asked to stay that litigation pending the completion of the reexamination.

It is well-established that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). In assessing whether to exercise its discretion to stay an action pending ex parte reexamination, a court should consider "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is

5
Case 2:22-cv-00556-WED   Filed 01/23/23   Page 5 of 13   Document 44

complete and whether a trial date has been set." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (quoting *Nokia Corp. v. Apple Inc.*, No. C.A. 09-791, 2011 U.S. Dist. LEXIS 58773, 2011 WL 2160904, at *1 (D. Del. June 1, 2011)); *see also Kove IO, Inc. v. Amazon Web Servs.*, No. 18 C 8175, 2022 U.S. Dist. LEXIS 40561, at *4-5 (N.D. Ill. Mar. 8, 2022) (citing *Norix Grp., Inc. v. Corr. Techs., Inc.*, 542 F. Supp. 3d 824, 830 (N.D. Ill. 2021)).

3. Analysis

   3.1. Undue Prejudice or Tactical Advantage

Pioneer argues that it will be prejudiced by a stay because, in light of the court having denied Pioneer's motion for a preliminary injunction, JVST will be able to continue to sell and profit from the alleged infringing products during the stay. (ECF No. 37 at 2.) This prejudice will be substantial, Pioneer argues, given that it takes the USPTO, on average, 19 months to complete an ex parte reexamination. (ECF No. 37 at 2.) And although the court previously noted that such harm may be compensable through damages, Pioneer asserts that it "is gravely concerned about its ability to collect on any judgment that may be entered against Wonder Creature" because it does not have any operations at its registered business address. (ECF No. 37 at 5.) Specifically, it alleges that when it attempted to serve the complaint it learned that JVST "did not actually have any operations and offices at" its registered address. (ECF No. 37 at 5.)

"It is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice." *Hill-Rom Servs. v. Stryker Corp.*, No. 1:11-cv-1120-

6

Case 2:22-cv-00556-WED   Filed 01/23/23   Page 6 of 13   Document 44

JMS-DKL, 2012 U.S. Dist. LEXIS 165470, at *7 (S.D. Ind. Nov. 20, 2012) (citing *CCP Sys. AG v. Samsung Electronics Corp.*, 2010 U.S. Dist. LEXIS 128943, 2010 WL 5080570, at *3 (D. N.J. 2010) (collecting cases)). Although reexaminations may be taking, on average, 19 months, the USPTO is nonetheless obligated to resolve reexaminations "with special dispatch." 37 C.F.R. § 1.550(a). "The Federal Circuit has explained that 'special dispatch envisions some type of unique, extraordinary, or accelerated movement." *C&C Power*, 2013 U.S. Dist. LEXIS 18171, at *3 (quoting *Ethicon*, 849 F.2d at 1426). The 19-month average is actually a significant improvement over how long it used to take. *See Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-TWP-MJD, 2020 U.S. Dist. LEXIS 131193, at *27 (S.D. Ind. July 24, 2020) (noting that the average time for ex parte reexamination was 25.8 months); *see also Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, No. 09-C-948, 2013 U.S. Dist. LEXIS 196999, at *7 (E.D. Wis. Mar. 15, 2013) (noting a 25.6 month average); *JAB Distribs., LLC v. London Luxury, LLC*, No. 09 C 5831, 2010 U.S. Dist. LEXIS 46192, at *8 (N.D. Ill. May 11, 2010) (noting a 25.4 month average). Thus, there is little concern that the reexamination will languish unnecessarily.

As for Pioneer's specific concern about its ability to collect from JVST, there is always a risk that a judgment may prove uncollectable. And delays increase this risk. When the parties are direct competitors, as here, there is an increased risk of prejudice resulting from the patent holder losing sales to the alleged infringer. *See Hill-Rom Servs.*, 2012 U.S. Dist. LEXIS 165470, at *7.

However, Pioneer's concerns fall well short of demonstrating that it will likely suffer undue prejudice from a stay. Despite allegedly knowing from the inception of the case that JVST did not have any operations at its registered address, in conjunction with its motion for a preliminary injunction, Pioneer never expressed concerns about its ability to collect damages from JVST. This is notable given that the recoverability of damages is relevant in a court's preliminary injunction analysis. *See JVST*, 2022 U.S. Dist. LEXIS 199290, at *24 (citing *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 725 F. Supp. 951, 959 (N.D. Ill. 1989)). But, more importantly, JVST replies that Pioneer's assertion regarding its business address is false. (ECF No. 39 at 9.) According to JVST's CEO, it maintains operations at the registered address; it simply has not been open daily since the onset of the pandemic. (ECF No. 40, ¶¶ 2-3.) Pioneer simply inferred that, because the office was not open on the day it attempted to serve the complaint, JVST no longer maintains the office. (ECF No. 39 at 9.) Thus, Pioneer has not demonstrated that it is likely to suffer undue prejudice if the court were to stay these actions.

Nor is there reason to suspect that a stay would result in an unfair tactical advantage to JVST. Pioneer argues that JVST inappropriately delayed in seeking ex parte reexamination. According to Pioneer, JVST sought reexamination "as a defensive maneuver in response to Pioneer Pet's motion for a preliminary injunction." (ECF No. 37 at 2; *see also*, *id*. ("It was a reactionary tactic in response to Pioneer Pet's motion for a preliminary injunction.").)

Case 2:22-cv-00556-WED Filed 01/23/23 Page 8 of 13 Document 44

Pioneer's attempt to characterize JVST's action as simply a "defensive maneuver" is unsupported by the record. JVST informed Pioneer on August 31, 2022, during the Rule 26(f) process, that it intended to seek reexamination and a stay of these actions. (ECF No. 23 at 1-3.) It was not until two days later when Pioneer filed its motion (ECF No. 19) that JVST first learned that Pioneer would be seeking a preliminary injunction. (ECF No. 28 at 4.) Given that courts may rely on the absence of a motion for a preliminary injunction to support a conclusion that a patent holder would not be prejudiced by a delay, *see Hill-Rom Servs.*, 2012 U.S. Dist. LEXIS 165470, at *7-8; *JAB Distribs.*, 2010 U.S. Dist. LEXIS 46192, at *10, a more reasonable inference is that it was Pioneer who filed a motion for tactical reasons once it learned that JVST planned on seeking a reexamination of the patents and a stay. There is no evidence that JVST's actions were, in any way, dilatory or reflective of either gamesmanship or bad faith.

Rather, than unduly prejudicing or unfairly advantaging any party, as explained below, a stay is more likely to benefit both parties by simplifying the issues and saving costs. Thus, this factor supports granting JVST's motion for a stay.

**3.2. Simplification of the Issues**

It is likely that a stay will simplify the issues for the parties, the court, and ultimately a jury. If upon reexamination the USPTO cancels any claim, it drops out of the case, and all the effort that would have been required to prosecute and defend the actions

related to that claim—discovery, expert opinions, claim construction, evidence of infringement, calculation of damages, etc.—will be saved.

Even if all claims survive reexamination, when it comes time for the court to construe those claims and assess validity, the court and the parties stand to benefit from the USPTO's expert analysis and the more robust prosecution history. *See Ethicon*, 849 F.2d at 1428 ("[E]ven if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court …."); *see also Gordon Gould, REFAC Int'l, Ltd. v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."); *CIVIX v. Nat'l Ass'n of Realtors*, No. 05 C 6869, 2007 U.S. Dist. LEXIS 102734, at *13-14 (N.D. Ill. Sep. 17, 2007) (citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988); *Cygnus Telecomms. Tech., LLC v. United World Telecomms., L.C. (In re Cygnus Telecomms. Tech., LLC)*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005)). In fact, a stay is so likely to be beneficial to all concerned that Congress initially considered making a stay pending reexamination automatic, but ultimately concluded it was unnecessary to do so given courts' inherent authority to issue stays. *Gordon Gould*, 705 F.2d at 1342.

Absent a stay, the parties will proceed with discovery that may prove irrelevant given the USPTO's decision. Or the USPTO's decision may lead to the parties needing to

related to that claim—discovery, expert opinions, claim construction, evidence of infringement, calculation of damages, etc.—will be saved.

Even if all claims survive reexamination, when it comes time for the court to construe those claims and assess validity, the court and the parties stand to benefit from the USPTO's expert analysis and the more robust prosecution history. *See Ethicon*, 849 F.2d at 1428 ("[E]ven if the reexamination did not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court …."); *see also Gordon Gould, REFAC Int'l, Ltd. v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."); *CIVIX v. Nat'l Ass'n of Realtors*, No. 05 C 6869, 2007 U.S. Dist. LEXIS 102734, at *13-14 (N.D. Ill. Sep. 17, 2007) (citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988); *Cygnus Telecomms. Tech., LLC v. United World Telecomms., L.C. (In re Cygnus Telecomms. Tech., LLC)*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005)). In fact, a stay is so likely to be beneficial to all concerned that Congress initially considered making a stay pending reexamination automatic, but ultimately concluded it was unnecessary to do so given courts' inherent authority to issue stays. *Gordon Gould*, 705 F.2d at 1342.

Absent a stay, the parties will proceed with discovery that may prove irrelevant given the USPTO's decision. Or the USPTO's decision may lead to the parties needing to

repeat certain discovery. Likewise, the parties will brief and the court will construe claims that may be found invalid by the USPTO. In any event, the court will not have the benefit of a more robust prosecution history or the USPTO's additional expert analysis. In sum, this factor strongly favors granting JVST's motion for a stay.

### 3.3. Status of these Actions

Pioneer disputes JVST's characterization of this case as being in an "early stage." (ECF No. 37 at 2.) It notes that these actions have been pending for seven months and discovery has commenced. (ECF No. 37 at 2.)

However, discovery has only just begun, with Pioneer serving its first set of interrogatories and requests for production only after JVST discussed with Pioneer whether it would stipulate to a stay. Initial claim construction briefs are not due for about seven months. The court has not scheduled a claim construction hearing, much less a trial. Against this backdrop, and in light of the schedule proposed by the parties and adopted by the court, it cannot genuinely be disputed that this case is in its early stages. *See JAB Distribs.*, 2010 U.S. Dist. LEXIS 46192, at *13 ("Plaintiff does not dispute, however, that the parties have not answered interrogatories, taken depositions, filed substantive motions, briefed claim-construction issues, or requested a trial date. Accordingly, the litigation is in its infancy, which militates in favor of granting a stay." (quotation marks omitted)).

Pioneer's remaining argument rests on an overstatement (if not misrepresentation) of what the court said when it denied Pioneer's motion for a preliminary injunction. Pioneer argues that the court already rejected JVST's claims of invalidity. (ECF No. 37 at 3-4.) But the court did *not* hold that the claims were valid. The court held only that, by not developing the argument, JVST failed to overcome the presumption of validity that applies at the preliminary injunction phase. *JVST*, 2022 U.S. Dist. LEXIS 199290, at *18.

Because this case is in its early stages, this factor again supports granting JVST's motion for a stay.

### 3.4. Conclusion

All the relevant factors support granting JVST's motion to stay these actions pending completion of the USPTO's ex parte reexamination. These actions are in the very early stages. Although any delay is disadvantageous to a patent holder who has allegedly suffered infringement of its patents, Pioneer has failed to show that it is likely to suffer undue prejudice as a result of a stay. Should it be found that Pioneer was injured by JVST's infringement during this stay, those injuries will be compensable in the form of damages. Nor will JVST enjoy any tactical advantage from a delay. And it is very likely that the reexamination will simplify the issues for the court and the parties. Absent a stay, there is a significant likelihood that certain efforts by the court and the parties will be either rendered moot or need to be repeated in light of the USPTO's decision.

Therefore, the court will grant JVST's motion for a stay pending the USPTO's ex parte reexamination of the patents at issue.

4. Escrow

Finally, Pioneer states: "If the Court is inclined to enter a stay, Pioneer Pet respectfully requests that the Court order Wonder Creature to place any profit generated from the sale of the accused fountains into an escrow account administered by its attorneys of record to ensure that Wonder Creature has funds to satisfy a potential judgment against it." Aside from this sentence, it does not otherwise develop this argument. It offers no authority to support its request. Nor has it filed any motion regarding its request. Pioneer having failed to properly present or develop this request, the court will not consider it further.

**IT IS THEREFORE ORDERED** that JVST Group's "Motion to Stay Litigation Pending Completion of Reexaminations of the Patents-In-Suit" (ECF No. 34) is **granted**. These actions are stayed. The Clerk shall administratively close these actions. Within 21 days of the date the reexamination process regarding the patents in suit is completed by the USPTO, the parties shall confer and file a joint motion to reopen the case and a proposed amended case management plan.

Dated at Milwaukee, Wisconsin this 23rd day of January, 2023.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge